United States Court of Appeals,

Eleventh Circuit.

No. 94-9152.

Margery A. MORSTEIN, Plaintiff-Appellant,

v.

NATIONAL INSURANCE SERVICES, INC.; Pan American Life Insurance
Company; the Shaw Agency; Scott Hankins, Defendants-Appellees.

Aug. 19, 1996.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 1:92-cv-2686-RLV), Robert L. Vining, Jr.,
Judge.

Before TJOFLAT, Chief Judge, and KRAVITCH, HATCHETT, ANDERSON,
EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit
Judges.

BIRCH, Circuit Judge:

This case was taken en banc to clarify the law in our circuit
regarding state law preemption by the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (1985). In
this appeal, we must decide whether state law claims asserted
against an independent insurance agent and his agency for
fraudulent inducement to purchase and negligence in processing an
application for an ERISA-governed insurance plan sufficiently
relate to an employee benefit plan within the meaning of section
514(a) of ERISA, 29 U.S.C. § 1144(a), so as to be preempted.
Because we find that the state law claims in this case do not
sufficiently relate to the employee benefit plan to be preempted by
ERISA, we reverse the district court's grant of summary judgment in
favor of the insurance agent and his agency.

I. FACTS

Plaintiff-appellant, Margery Morstein, is the president,

director, and sole shareholder of Graphic Promotions, Inc. ("Graphic"). At all times relevant to this appeal, Morstein was one of two employees of Graphic. In 1991, Morstein met with Scott Hankins, an insurance broker and employee of the Shaw Agency, for the purpose of obtaining a replacement policy of major medical insurance for herself and Graphic's other employee. The policy was to be administered by National Insurance Services, Inc. ("National") and underwritten by Pan-American Life Insurance Company ("Pan-American").[1] Morstein alleges that during her meeting with Hankins, she advised him that any policy of major medical insurance that would replace her current policy would be unacceptable if it excluded from coverage medical treatment related to any preexisting medical condition. Morstein asserts that Hankins assured her that the policy that he proposed would provide the same coverage for preexisting conditions as her current policy. The policy offered by Hankins was issued to Graphic, and Graphic paid the initial premium.

Over one year after the policy was issued, Morstein underwent total hip replacement surgery. When she submitted a claim for payment for this procedure, National refused payment because it asserted that Morstein's surgery treated a preexisting condition, which she failed to disclose during the application process. National then rescinded the policy and refunded to Graphic the premium payments that were made on behalf of Morstein. Morstein claims that Hankins and the Shaw Agency fraudulently induced her to

[1]Morstein voluntarily dismissed National and Pan-American before the commencement of this appeal, although they were defendants in the original action.

purchase a policy of major medical insurance and that she therefore allowed a separate full-coverage insurance policy to lapse. She further alleges that Hankins and the Shaw Agency were negligent in processing her application for insurance and that she has state law claims against them for negligence and fraud.[2]

Morstein filed an action in state court, alleging negligence, malfeasance, misrepresentations, and breach of contract. Defendants removed the action to federal court on the basis that Morstein's claims were governed by ERISA. The district court denied Morstein's motion to remand and found that defendants were entitled to summary judgment as to the state law claims against them. The district court concluded that Morstein's claims "clearly relate to the employee benefit plan established by Graphic Promotions; therefore, those claims are preempted by ERISA." R2-29-3. Morstein appealed the district court's grant of summary judgment, and the original appellate panel in this case reluctantly affirmed the district court's grant of summary judgment and held that it was bound by our decision in *Farlow v. Union Cent. Life Ins. Co.,* 874 F.2d 791 (11th Cir.1989). *Morstein v. National Ins. Servs., Inc.,* 74 F.3d 1135, 1138-39 (11th Cir.), *vacated and reh'g en banc granted,* 81 F.3d 1031 (11th Cir.1996).

The original panel found the facts in this case to be

---

[2]The Shaw Agency is an independent agency or brokerage that is authorized to write policies for several insurance companies. *See* Hankins Depo. at 11-14. In Georgia, independent insurance agents are generally considered to be agents of the insured, not the insurer. *European Bakers, Ltd. v. Holman,* 177 Ga.App. 172, 338 S.E.2d 702, 704 (1985), *cert. denied* (Jan. 17, 1986).

duplicative of the facts in *Farlow*.[3]  *Id.* at 1137.  The panel,
therefore, was bound to adhere to the holding of *Farlow* that ERISA
preempted a designated beneficiary's state law misrepresentation
and negligence claims against an insurance company and its agent.[4]
Following our decision in *Farlow,* several district courts in our
circuit, faced with similar state law claims, have attempted to
distinguish their cases from *Farlow.  See Wiesenberg v. Paul Revere
Life Ins. Co.,* 887 F.Supp. 1529, 1532-33 (S.D.Fla.1995) (reasoning
that the decision in *Farlow* was ambiguous with regard to whether or
not its holding applied to independent insurance agent as well as
the insurance company, and turning to law in other circuits to

---

[3]In *Farlow,* plaintiff was a shareholder, president, and
member of the board of directors of Pace-Plus, Inc.  Farlow and
his wife were designated beneficiaries under Pace-Plus's employee
benefit plan.  The Farlows alleged that an insurance agent
induced them to purchase a new group health life insurance plan,
and that the insurance agent fraudulently misrepresented that,
among other things, the new policy would provide the same
coverage as the company's old policy.  *Farlow,* 874 F.2d at 792.
After switching to the new policy, Farlow's wife became pregnant.
The Farlows then discovered that, unlike Pace-Plus's old policy,
the new policy did not provide maternity or pregnancy coverage.
*Id.*

[4]Our court found the conduct alleged by the Farlows to be
"intertwined" with the refusal to pay benefits:

> [T]he conduct alleged in these claims is not only
> contemporaneous with [the insurer's] refusal to pay
> benefits, but the alleged conduct is intertwined with
> the refusal to pay benefits.  Finding the Farlows'
> state law claims not wholly remote in content from the
> [insurer's] plan, we reject the Farlows' contention
> that simply because their claims invoke misconduct in
> the sale and implementation of the [insurer's] plan,
> their claims do not relate to the plan.

Consequently, we hold that ERISA preempts the Farlows'
misrepresentation and negligence claims.

*Farlow,* 874 F.2d at 794.

support its holding that Wiesenberg's state law fraud claims against the insurance agency and its agent were not preempted by ERISA); *Barnet v. Wainman,* 830 F.Supp. 610, 611-12 (S.D.Fla.1993) (finding no preemption of plaintiff's claims against insurance agent for fraudulent misrepresentation because, unlike *Farlow,* the scope of coverage of plaintiff's claim would not be the focus of the litigation); *Martin v. Pate,* 749 F.Supp. 242, 246-47 (S.D.Ala.1990) (finding "the applicability of *Farlow* to the facts of this case" to be "questionable" and holding that plaintiff's state law claim of fraudulent misrepresentation of coverage of policy was not preempted), *aff'd sub nom. Martin v. Continental Investors,* 934 F.2d 1265 (11th Cir.1991) (table).

Our decisions in the ERISA preemption area have been neither consistent nor clear. Since *Farlow* was decided, the Supreme Court and several other circuit courts have issued opinions that clarify the purpose and intent of the ERISA state law preemption doctrine. Furthermore, the conflict among the district courts in our circuit demands that we revisit this issue and attempt to provide some clear guidance in the morass of ERISA preemption law. We find it helpful, therefore, to trace the development of the preemption doctrine before applying the words of the statute to the case at bar.

## II. ANALYSIS

Morstein alleges that the district court erred in applying the preemption doctrine under ERISA to bar her state law claims and thus erred in granting summary judgment in favor of Hankins and the Shaw Agency. We review a grant of summary judgment *de novo.*

*Forbus v. Sears Roebuck & Co.,* 30 F.3d 1402, 1404 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 906, 130 L.Ed.2d 788 (1995).

*A. ERISA Legislative History*

The Supreme Court has described the overall intent of ERISA as follows:  "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983);  *see also Lordmann Enters., Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1533 (11th Cir.1994), *cert. denied,* --- U.S. ----, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995).  Section 514(a) of ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title."  29 U.S.C. § 1144(a) (1985).[5]  Unfortunately, the statute does not

---

[5]Section 1003(a) provides that ERISA applies to all employee benefit plans established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce."  28 U.S.C. § 1003(a) (1985).  The exemptions described in section 1003(b) are not applicable in this case.  *Id.* at § 1003(b).

An "employee benefit plan" is defined under ERISA as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  *Id.* at § 1002(3) (1985).

The medical insurance policies involved in this case qualify as "employee welfare benefit plans", which, together with the term "welfare plan," are defined in ERISA section 3(1) as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the

define the term "relate to," and it has fallen to the courts to deduce Congress's intent and apply this interpretation to the facts of each case that arises. A search through the volumes of legislative history of ERISA provides very little information regarding federal preemption of state law.

The Supreme Court in *Shaw* relied heavily on the statements of Representative Dent and Senators Williams and Javits in support of its conclusion that the intent of Congress was to preempt broadly. *Shaw,* 463 U.S. at 99-100, 103 S.Ct. at 2901. Both Representative Dent and Senator Williams emphasized the intent of Congress to broadly preempt state and local regulation of employee benefit plans. Representative Dent called the preemption doctrine "the crowning achievement of this legislation," and promised that it would "eliminat[e] the threat of conflicting and inconsistent State and local regulation." 120 Cong.Rec. 29,197 (1974). Senator Williams stated that preemption was "intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law." *Id.* at 29,933. Only Senator Javits remarked that the final language of the preemption clause was a product of compromise between the House and Senate versions of the bill and that further evaluation of preemption policy was necessary.[6]

---

> purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment,....

*Id.* at § 1002(1).

[6]Senator Javits made the following comments:

*B. Supreme Court Case Law*

Because the legislative history is sparse, it has fallen to

the courts to interpret the phrase "relate to" and give it meaning

---

Both House and Senate bills provided for
preemption of State law, but—with one major exception
appearing in the House bill—defined the perimeters of
preemption in relation to the areas regulated by the
bill.  Such a formulation raised the possibility of
endless litigation over the validity of State action
that might impinge on Federal regulation, as well as
opening the door to multiple and potentially
conflicting State laws hastily contrived to deal with
some particular aspect of private welfare or pension
benefit plans not clearly connected to the Federal
regulatory scheme.

Although the desirability of further regulation—at
either the State or Federal level—undoubtedly warrants
further attention, on balance, the emergence of a
comprehensive and pervasive Federal interest and the
interests of uniformity with respect to interstate
plans required—but for certain exceptions—the
displacement of State action in the field of private
employee benefit programs.  The conferees—recognizing
the dimensions of such a policy—also agreed to assign
the Congressional Pension Task Force the responsibility
of studying and evaluating preemption in connection
with State authorities and reporting its findings to
Congress.  If it is determined that the preemption
policy devised has the effect of precluding essential
legislation at either the State or Federal level,
appropriate modifications can be made.

120 Cong.Rec. 29,942 (1974).

The ERISA Oversight Report of the Pension Task Force of
the Subcommittee on Labor Standards was issued in 1977.
Pension Task Force of Subcomm. on Labor Standards of House
Comm. on Educ. and Labor, ERISA Oversight Report, H.R.Rep.
No. 365, 94th Cong., 2d Sess. (1977).  The Task Force
concluded that, "[b]ased on our examination of the effects
of section 514, it is our judgment that the legislative
scheme of ERISA is sufficiently broad to leave no room for
effective state regulation within the field preempted.
Similarly it is our finding that the Federal interest and
the need for national uniformity are so great that
enforcement of state regulation should be precluded."  *Id.*
at 9.

in the context of the facts that arise in each particular case.[7] The Supreme Court noted as early as 1981 that defining boundaries of the preemption doctrine would not be an easy task. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). In *Alessi,* retired employees challenged a provision in their employer-provided pension plan, which provided that an employee's retirement benefits are offset by any worker's compensation awards for which the employee is eligible, as violating a New Jersey statute that prohibited these offsets. *Id.*

---

[7]According to Prof. Catherine L. Fisk:

> In the twenty-one years since ERISA was enacted, the Court has rendered decisions with written opinions in twelve ERISA preemption cases, and has decided a number of others without opinion. Preemption cases constitute roughly half of all the ERISA cases the Court has considered. The relatively large number of ERISA preemption opinions has not, however, led to clarity in the law. The lower courts have decided thousands of preemption cases, yet remain mired in confusion about basic points. ERISA preemption offers proof that plain language textualism leads to uncertainty and incoherence in the law.

Catherine L. Fisk, *The Last Article About the Language of ERISA Preemption? A Case Study of the Failure of Textualism,* 33 Harv.J. on Legis. 35, 58-59 (1996) (footnotes omitted).

The Supreme Court apparently has not uttered its final word on the issue of preemption either. The Court recently granted certiorari in *Dillingham Construction N.A., Inc. v. Sonoma County,* 57 F.3d 712 (9th Cir.1995), and requested briefing on the issue of whether Congress intended, in enacting ERISA, to preempt states' traditional regulation of wages, apprenticeship, and state-funded public works construction through a state prevailing wage law that restricts a contractor's payment of lower apprentice-specific wages to apprentices who are registered in programs approved as meeting federal standards. *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.,* --- U.S. ----, 116 S.Ct. 1415, 134 L.Ed.2d 541 (1996).

at 507-08, 101 S.Ct. at 1898. The Court remarked that it "need not determine the outer bounds of ERISA's pre-emptive language to find this New Jersey provision an impermissible intrusion on the federal regulatory scheme." *Id.* at 525, 101 S.Ct. at 1907. The Court noted that, "[o]ther courts have reached varying conclusions as to the meaning of ERISA's pre-emptive language in other contexts.... We express no views on the merits of any of those decisions." *Id.* at 525 n. 21, 101 S.Ct. at 1907 n. 21 (citations omitted). Nevertheless, the Court indicated that it leaned towards a broad interpretation: "ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.... ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision." *Id.*

The Court next addressed the preemption issue in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The issue before the Court in *Shaw* was whether two New York human rights and disability statutes that prohibited discrimination on the basis of pregnancy were preempted by ERISA. *Id.* at 88, 103 S.Ct. at 2895. The Supreme Court in a prior unrelated case had determined that discrimination based on pregnancy was not actionable under Title VII of the Civil Rights Act of 1964. *Id.; General Elec. Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The Court held that even though ERISA does not contain any provisions proscribing discrimination in the provision of employee benefits, the New York laws were "relat[ed] to" employee benefit plans and, therefore, fell under

section 514(a). *Shaw* at 96, 103 S.Ct. at 2899. Citing Black's Law

Dictionary in support thereof, the Court made the following attempt

to define "relates to":

> A law "relates to" an employee benefit plan, in the normal
> sense of the phrase, if it has a connection with or reference
> to such a plan. Employing this definition, the Human Rights
> Law, which prohibits employers from structuring their employee
> benefit plans in a manner that discriminates on the basis of
> pregnancy, and the Disability Benefits Law, which requires
> employers to pay employees specific benefits, clearly "relate
> to" benefit plans. We must give effect to this plain language
> unless there is good reason to believe Congress intended the
> language to have some more restrictive meaning.
>
> In fact, however, Congress used the words "relate to" in
> § 514(a) in their broad sense. To interpret § 514(a) to
> preempt only state laws specifically designed to affect
> employee benefit plans would be to ignore the remainder of §
> 514. It would have been unnecessary to exempt generally
> applicable state criminal statutes from preemption in §
> 514(b), for example, if § 514(a) applied only to state laws
> dealing specifically with ERISA plans.

*Id.* at 96-98, 103 S.Ct. at 2900 (footnote & citations omitted).

Once again, however, the Supreme Court declined to remark on how

broad the preemption language of ERISA sweeps, except to note that

there is some boundary:

> Some state actions may affect employee benefit plans in too
> tenuous, remote, or peripheral a manner to warrant a finding
> that the law "relates to" the plan.... The present litigation
> plainly does not present a borderline question, and we express
> no views about where it would be appropriate to draw the line.

*Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21.

The Supreme Court first addressed the issue of whether ERISA

preempts state common law tort and contract claims in *Pilot Life*

*Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39

(1987). Dedeaux was injured in an employment-related accident and

filed a disability claim with Pilot Life Insurance Company ("Pilot

Life"), the provider of Dedeaux's employer's long term disability

employee benefit plan. *Id.* at 43, 107 S.Ct. at 1551. When Dedeaux's benefits were terminated by Pilot Life, he instituted a diversity suit against the company alleging tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. *Id.* Pilot Life argued that Dedeaux's state law claims were preempted by ERISA. After discussing the legislative history of ERISA and emphasizing its broad preemptive intent, the Supreme Court held that Dedeaux's state law claims were preempted and that the insurance savings clause did not apply to the claims. The Court did not hesitate in its conclusion that Dedeaux's common law causes of action, "each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a)." *Id.* at 48, 107 S.Ct. at 1553.[8]

In *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), an employee brought a state law action against his employer alleging that the employer had wrongfully terminated him in order to avoid contributing to, or paying benefits under, the employee's pension plan. The Court found that

---

[8]The sticking-point for the Court came in its determination of whether the causes of action should be saved under the insurance savings clause. *Pilot Life,* 482 U.S. at 48-50, 107 S.Ct. at 1553-54; 29 U.S.C. § 1144(b)(2)(A). The Court determined that the savings clause should be interpreted narrowly and that Dedeaux's claims could not be saved because his common law claims could not be viewed as laws that "regulate[d] insurance" as they were not specifically directed toward the insurance industry. *Pilot Life,* 482 U.S. at 50, 107 S.Ct. at 1554. The Court also looked to the intent of Congress that the civil enforcement provisions of ERISA be the exclusive vehicle for actions brought by ERISA plan participants and beneficiaries, who assert claims for improper processing of benefits. *Id.* at 52-54, 107 S.Ct. at 1555-57.

the employee's claim was preempted under ERISA. *Id.* at 142, 111 S.Ct. at 484. In discussing whether the claim "relates to" an employee benefit plan covered by ERISA, the Court stated that:

> [I]n order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer has a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.

*Id.* at 140, 111 S.Ct. at 483.

In 1995, the Supreme Court issued its opinion in *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* --- U.S. ----, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (hereinafter "*New York Blues* "). The issue in *New York Blues* was whether ERISA "pre-empts the state provisions for surcharges on bills of patients whose commercial insurance coverage is purchased by employee health-care plans governed by ERISA, and for surcharges on [health maintenance organizations (HMOs) ] insofar as their membership fees are paid by an ERISA plan." *Id.* at ----, 115 S.Ct. at 1673-74. The district court in the case had determined that the New York surcharge law was preempted by ERISA because the surcharges would affect commercial insurers and HMOs, and, therefore, indirectly affect ERISA plans by increasing plan costs. *Id.* at ----, 115 S.Ct. at 1675. The Second Circuit affirmed the decision of the district court and cited *Shaw v. Delta Air Lines* and *Ingersoll-Rand v. McClendon* in support of its finding of broad preemption. *See Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 717-19 (2d Cir.1993), *rev'd,* --- U.S. ----, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

The Supreme Court rejected the conclusions of the Second Circuit and essentially turned the tide on the expansion of the

preemption doctrine:

> The governing text of ERISA is clearly expansive....   If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980).  But that, of course, would be to read Congress's words of limitation as a mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.  That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.

*Id.* at ----, 115 S.Ct. 1677.  The Court next cited the often-quoted language in *Shaw* that defined a law "relat[ing] to" an employee benefit plan as one that " "has a connection with or reference to such a plan.' "  *Id.* at ----, 115 S.Ct. 1677 (quoting *Shaw,* 463 U.S. at 96-97, 103 S.Ct. at 2900).  After acknowledging that the statute in question made no reference to an employee benefit plan, the Court hinged its analysis on interpreting the phrase "connection with" from *Shaw.*  The Court then stated:

> But this still leaves us to question whether the surcharge laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to."  For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections.  We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

*Id.* at ----, 115 S.Ct. at 1677.  The Court went on to reason that a reading of the preemption provision that is so broad as to displace "all state laws affecting costs and charges on the theory that they indirectly relate to ERISA plans ... would effectively read the limiting language in § 514(a) out of the statute...." *Id.* at ----, 115 S.Ct. at 1679.  This conclusion, the Court stated,

would contradict the "basic principles of statutory interpretation" and would go against the Court's prior determination that a state law is not preempted when the law has too tenuous a connection with the ERISA plan. *Id.* at ----, 115 S.Ct. at 1679-80. The Court concluded:

> While Congress's extension of pre-emption to all "state laws relating to benefit plans" was meant to sweep more broadly than "state laws dealing with the subject matters covered by ERISA[,] reporting, disclosure, fiduciary responsibility, and the like," *Shaw,* 463 U.S., at 98, and n. 19, 103 S.Ct. at 2900, and n. 19, nothing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern....

*Id.* at ----, 115 S.Ct. at 1679-80 (citations omitted).

C. *Application to Morstein's Claims*

While the narrow holding in *New York Blues, i.e.,* state laws that govern general health care regulation and affect ERISA plans only by means of indirect economic effects are not preempted, is not particularly relevant to the instant case, the broad guidance that the Court gave in analyzing a state law is helpful. Using the analysis outlined by the Supreme Court in *New York Blues,* we look to see whether the state law claims brought by Morstein have a "connection with" the ERISA plan. To determine that, we examine whether the claims brought fit within the scope of state law that Congress understood would survive ERISA.

The Fifth Circuit has found that Congress did not intend for ERISA preemption to extend to state law tort claims brought against an insurance agent. *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.1990). Such preemption, reasoned the Fifth Circuit, would "immunize agents from personal liability for their solicitation of

potential participants in an ERISA plan prior to its formation."
*Id.* We now adopt the rationale of the Fifth Circuit as stated in
*Perkins* and hold that when a state law claim brought against a
non-ERISA entity does not affect relations among principal ERISA
entities as such, then it is not preempted by ERISA. To the extent
that any of our prior opinions differ from this holding, they
should be deemed overruled.[9]

Morstein is a plan beneficiary who is bringing a suit against
the insurance agency and agent who allegedly fraudulently induced
her to change benefit plans. The insurance agent and agency are
not ERISA entities. ERISA entities are the employer, the plan, the
plan fiduciaries, and the beneficiaries under the plan. *See*
*Travitz v. Northeast Dept. ILGWU Health & Welfare Fund,* 13 F.3d
704, 709 (3d Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 2165,
128 L.Ed.2d 888 (1994); *Sommers Drug Stores v. Corrigan Enters.,*
*Inc.,* 793 F.2d 1456, 1467 (5th Cir.1986), *cert. denied,* 479 U.S.
1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). Hankins and the Shaw
Agency had no control over the payment of benefits or a
determination of Morstein's rights under the plan.[10]

---

[9]We recognize that the factual circumstance now before us is
not the only one in which a state law claim will not be preempted
by ERISA.

[10]Our conclusion contradicts the reasoning offered by this
court in *Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277
(11th Cir.1987). There we reasoned that because the preemption
doctrine extended to claims brought by an employee against an
employer, it must extend to claims against insurance agents as
well. "This indicates that the "broad common-sense meaning' of
the term "relate to,' ... is quite broad indeed." *Id.* at 281
(citation omitted). Subsequent cases have made clear, however,
that employers, unlike independent insurance agents, are ERISA
entities and thus much more closely "related to" the plan.

In *Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc.,* 57 F.3d 1040 (11th Cir.1995), we held that state law fraud claims can be intertwined with benefit plans "where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system." *Id.* at 1042. In *Variety,* the action was brought by a hospital, via an assignment of the claims of the parents of the beneficiary, against the plan itself and alleged that the plan had engaged in fraud and misrepresentation by allegedly denying coverage of an experimental bone marrow transplant performed at the hospital. *Id.* These claims involved ERISA entities, the beneficiary (before assignment), and the plan, and the state law claims were based on an interpretation of the plan's terms. When a state law claim involves the reliance on an insurer's promise that a particular treatment is fully covered under a policy, however, a claim of promissory estoppel is not "related to" the benefits plan. *See Variety* at 1043 & n. 5.[11]

Although the remedy sought may affect the plan in that Morstein's damages (should she successfully prevail on her claims) against Hankins and/or the Shaw Agency may be measured based on what she would have received under her old plan, such indirect relation between a beneficiary and the plan is not enough for

---

[11]This type of claim can be contrasted with an action brought by a beneficiary against an insurance company regarding the scope of the coverage of the plan. The claim brought by Morstein against Pan-American and National was of the latter type and would be preempted, but Morstein's claims against Pan-American and National are not at issue on appeal.

preemption. *Forbus,* 30 F.3d at 1406-67 (noting that "the mere fact that the plaintiffs' damages may be affected by a calculation of pension benefits is not sufficient to warrant preemption"); *see also Smith v. Texas Children's Hosp.,* 84 F.3d 152, 155 (5th Cir.1996). The Supreme Court in *New York Blues* made it clear that economic impact alone is not necessarily enough to preempt a state law. *New York Blues,* --- U.S. at ----, 115 S.Ct. at 1683. Therefore, the possibility that insurance premiums will be higher or that insurance will be more difficult to obtain because independent agents will have less incentive to sell insurance to employers whose employee benefit plans will be governed by ERISA, does not provide a reason to preempt state laws that place liability on agents for fraud. These same agents currently face the threat of state tort claims if they make fraudulent misrepresentations to individuals and entities not governed by ERISA. To hold these agents accountable in the same way when making representations about an ERISA plan merely levels the playing field.

Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA. As discussed above, Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans. *See Shaw,* 463 U.S. at 90, 103 S.Ct. at 2896. To immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans would not promote this objective. If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing

among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan. These employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans where state law places the duty on agents to deal honestly with applicants.

## III. CONCLUSION

Morstein challenges the district court's conclusion that her state law claims against an independent insurance agent and his agency for fraudulent inducement to purchase and negligence in processing her application for an ERISA-governed insurance plan are preempted by section 514(a) of ERISA. We conclude that these claims do not fall within ERISA's broad preemptive scope, as they do not have a sufficient connection with the plan to "relate to" the plan. Accordingly, the district court's grant of summary judgment in favor of Hankins and the Shaw Agency is REVERSED.