## A05A0455. ADVANCEPCS et al. v. BAUER et al.
(617 SE2d 637)

PHIPPS, Judge.

Deborah R. Bauer and Diane G. Wright, on behalf of themselves and those similarly situated, filed a class action complaint against AdvancePCS, PCS Health Systems, Inc., PCS Mail Services of Fort Worth, Inc. and PCS Mail Services of Birmingham, Inc. (collectively, PCS) for their alleged wrongful classification of the generic drug tamoxifen as a brand name drug. PCS initially removed the case to federal court based on its assertion that the action was completely preempted by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1001 et seq., as amended. Bauer and Wright filed a motion to remand the action to state court, and that motion was granted. PCS then filed a motion to dismiss the state court action for lack of subject matter jurisdiction, contending that Bauer and Wright's claims related to ERISA employee benefit plans and were therefore preempted under ERISA § 514 (a), 29 USC § 1144 (a). The trial court denied the motion. On appeal, PCS claims that the trial court erred in concluding that Bauer and Wright's state cause of action was not preempted by ERISA. We agree with the trial court's conclusion and affirm the denial of PCS's motion to dismiss.

Bauer and Wright are breast cancer survivors who were prescribed the drug tamoxifen to prevent the cancer from recurring. AdvancePCS and PCS Health Systems, Inc. are pharmacy benefit management companies who provide services such as processing

prescription drug claims to various health insurance payors, including self-insured employers, insurance companies, health maintenance organizations and similar organizations. PCS Mail Services of Fort Worth, Inc. and PCS Mail Services of Birmingham, Inc. are mail order pharmacies who, with the help of AdvancePCS and PCS Health Systems, sell prescription drugs directly to consumers whose prescription drug benefits are processed by AdvancePCS and/or PCS Health Systems.

Bauer and Wright had major medical coverage provided by their respective employers. AdvancePCS or PCS Health Systems was the pharmaceutical benefit manager for Bauer and Wright's medical coverage plans.[1] Those plans required a co-payment for prescription drugs, and the co-payment was higher for brand name drugs than for generic drugs. PCS classified tamoxifen as a brand name drug. As a result, Bauer and Wright were required to make the higher co-payment.

Bauer and Wright claimed that PCS benefitted financially from the improper classification of tamoxifen as a brand name drug and sought to require them to disgorge those economic benefits. The only theory of recovery they asserted was unjust enrichment. PCS claimed that Bauer and Wright's cause of action was preempted by ERISA and argue on appeal that the trial court erred by concluding otherwise.

ERISA regulates plans providing employees with fringe benefits. It "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."[2] ERISA imposes certain requirements on pension and welfare plans, but does not require that employers provide any particular benefits.[3]

ERISA § 514 (a), 29 USC § 1144 (a), provides that, with certain exceptions not relevant here, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."[4]

> Section 514 (a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States

---

[1] The parties agree that the benefit plans are governed by ERISA.

[2] *Shaw v. Delta Air Lines*, 463 U. S. 85, 90 (103 SC 2890, 77 LE2d 490) (1983) (citations omitted).

[3] See id. at 91.

[4] ERISA § 514 (c) (1), 29 USC § 1144 (c) (1).

or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries.[5]

With those purposes in mind, we consider whether Bauer and Wright's unjust enrichment cause of action "relates to" their employee benefit plans such that it would be expressly preempted by ERISA § 514 (a).[6] A law "relates to" an employee benefit plan if it has a connection with or reference to such a plan, but § 514 (a) is not limited to state laws specifically designed to affect employee benefit plans.[7] And although § 514 (a) has been broadly construed, the United States Supreme Court has recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."[8]

We do not find a sufficient connection between the state law claims asserted here and the ERISA benefit plans at issue to conclude that the claims "relate to" those plans. Bauer and Wright are not seeking, directly or indirectly, to recover benefits due them under their respective plans — they do not claim that they are entitled to any benefits from their plans that they have not received.[9] Instead, they claim that PCS misclassified the drug tamoxifen and that the erroneous classification was not based on the terms of their plans.[10]

Contrary to the dissent's argument, Bauer and Wright's unjust enrichment claims are not disguised claims for prescription drug benefits. Their claims for tamoxifen were covered by their respective plans. The plans paid for their portion of tamoxifen, based on PCS's classification of the drug as brand name.[11] It was PCS, not the plans or plan sponsors, who required Bauer and Wright to pay the higher

---

[5] *Ingersoll-Rand Co. v. McClendon*, 498 U. S. 133, 142 (111 SC 478, 112 LE2d 474) (1990) (citations omitted).

[6] This "express preemption" under ERISA § 514 (a), 29 USC § 1144 (a), is also referred to as "defensive preemption."

[7] *Shaw*, supra at 96-98.

[8] Id. at 100, n. 21.

[9] Cf. *Norton v. North Ga. Foods*, 211 Ga. App. 684 (440 SE2d 263) (1994) (complaints sought recovery of damages for fraud and negligence for failure to pay medical benefits); *Porter v. Buckeye Cellulose Corp.*, 189 Ga. App. 818, 819 (2) (a) (377 SE2d 901) (1989) (appellant sought to recover disability benefits he contends were due pursuant to plan provisions).

[10] In another lawsuit, a PCS representative testified that PCS designates tamoxifen as a brand name drug for all of its clients, regardless of the language of the policy or plan applicable to a particular client. She further testified that PCS has a contract with First Data Bank, who provides information to PCS about whether a drug should be designated as generic or brand name.

[11] The plans were required to pay the higher costs associated with a brand name versus a generic drug.

co-payment. And PCS's classification of tamoxifen as brand name was not based on the terms of the plans, but on information PCS received from a third party.

Further, contrary to PCS's claims, the trial court will not be required to interpret the provisions of the respective plans to address Bauer and Wright's claims. The only issue requiring reference to the plans is the price difference between the co-payment for a brand name drug and the co-payment for a generic drug. The fact that the remedy sought may affect the plan because any damages awarded to Bauer and Wright, if they ultimately prevail, will be measured based on the difference between the two co-payment amounts, as set forth in the plans, is not enough for preemption.[12]

In addition, Bauer and Wright have not asserted claims against their plans, their employers or any other ERISA entity. In *Morstein v. Nat. Ins. Svcs.*,[13] the United States Court of Appeals for the Eleventh Circuit held that "when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA."[14] ERISA entities include the employer, the plan, the plan fiduciaries and the beneficiaries under the plan.[15] The parties agree that PCS merely processes prescription drug claims and is not a fiduciary of the plans. Thus, the principal ERISA entities in this case are Bauer and Wright, their employers and their benefit plans. We agree with the trial court's conclusion that this lawsuit does not affect the relationship between those principal ERISA entities.

PCS relies heavily on the United States Supreme Court's decision in *Aetna Health v. Davila*[16] to support its claim that Bauer and Wright's claims are preempted. In *Davila*, the plaintiffs were a participant and a beneficiary of ERISA benefit plans who sued the respective plan administrators for refusing to provide coverage for certain treatment recommended by their treating physicians. One plaintiff, Davila, was prescribed Vioxx, but the plan administrator refused to pay for it, and Davila elected to take a different medication from which he suffered a severe reaction resulting in extensive treatment and hospitalization. The other plaintiff, Calad, underwent surgery. When her plan's administrator refused to provide coverage for the extended hospital stay recommended by her physician, she was discharged. She suffered postsurgery complications that required her to return to the hospital and later claimed that the

---

[12] See *Morstein v. Nat. Ins. Svcs.*, 93 F3d 715, 723 (11th Cir. 1996).
[13] Supra.
[14] Id. at 722.
[15] Id.
[16] 542 U. S. 200 (124 SC 2488, 159 LE2d 312) (2004).

complications would not have occurred if the administrator had approved her for a longer hospital stay. Davila and Calad sued separately in state court, claiming that the administrators' refusal to cover the recommended services violated their "duty to exercise ordinary care when making health care treatment decisions," and that those refusals "proximately caused" their injuries.[17]

We do not find *Davila* controlling for several reasons. First, *Davila* is factually distinguishable. Davila and Calad sued their respective plan administrators because they were denied benefits based on the terms of their ERISA plans. Bauer and Wright complain that PCS misclassified tamoxifen based on a uniform practice applied to all of its clients, relying not on the terms of any policy or plan but on information received pursuant to an agreement with a third party. Unlike the basis of liability in *Davila,* PCS's potential liability does not derive "entirely from the particular rights and obligations established by the benefit plans."[18]

Moreover, the Supreme Court in *Davila* was addressing the issue of complete preemption, not express preemption, to determine whether a cause of action was removable to federal court.[19] Complete preemption occurs when a federal statute wholly displaces a state law cause of action.[20] In that situation, the state law claim can be removed to federal court.[21] The Court held that the claims asserted by Davila and Calad fell within the scope of ERISA § 502 (a) (1) (B), 29 USC § 1132 (a) (1) (B),[22] and were therefore completely preempted by the civil enforcement provisions of ERISA § 502 and removable to federal district court.[23]

Although complete preemption[24] is not the test applied once a case has been remanded to state court, we recognize that claims that are completely preempted are also expressly preempted and address this test solely to demonstrate further why *Davila* is not controlling. Four elements must be satisfied for complete preemption: (1) there must be a relevant ERISA plan; (2) the plaintiff must have standing

---

[17] *Davila*, supra, 124 SC 2488, 2493 (U. S. Reporter cite not available).

[18] Id. at 2498.

[19] The complete preemption issue was addressed in this case by the district court when it remanded the case to the state court.

[20] *Davila*, supra at 2495.

[21] Id.

[22] ERISA § 502 (a) (1) (B), 29 USC § 1132 (a) (1) (B), provides that a civil action may be brought by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[23] *Davila*, supra at 2498.

[24] The United States Court of Appeals for the Eleventh Circuit often refers to complete preemption as "superpreemption."

to sue under that plan; (3) the defendant must be an ERISA entity; and (4) the complaint must seek relief like that available under ERISA § 502 (a), such as a claim for benefits under a plan.[25] The first two elements of the test are satisfied, but the third element is not because none of the PCS entities are ERISA entities. As noted above, the parties agree that PCS merely processes prescription drug claims and is not a fiduciary of either plan, unlike the defendants in *Davila*, who were both responsible for paying plan benefits and making coverage decisions.[26] Thus, the state law claims in this action are not completely preempted as were the claims in *Davila*.[27]

PCS also argues that Bauer and Wright's claims are preempted because they conflict with the civil enforcement provisions of ERISA § 502 (a), 29 USC § 1132 (a). The United States Supreme Court has explained that Congress intended § 502 (a) to be the exclusive remedy for rights guaranteed under ERISA.[28] However, Bauer and Wright are not asserting rights that are guaranteed under ERISA. They do not seek to recover benefits due them under the plans.[29] Nor do they seek to obtain relief for any breach of fiduciary duty or for any violation of any provision of ERISA or of the terms of the plans.[30] Contrary to PCS's claims, Bauer and Wright cannot obtain the relief they seek from their ERISA plans or their employers. Thus, the relief they seek is not "within the power of the federal courts to provide."[31]

Furthermore, allowing preemption of the unjust enrichment claim asserted here will not serve Congress's purpose for ERISA. As noted above, "Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans."[32] To immunize PCS from liability for alleged improper classification of drugs for ERISA plan participants and beneficiaries, but not for persons whose benefits come from a non-ERISA source, would not promote this objective.[33]

We conclude that Bauer and Wright's cause of action is not expressly preempted by ERISA § 514 (a), 29 USC § 1144 (a), and that it does not conflict with the civil enforcement provisions of ERISA

---

[25] *Butero v. Royal Maccabees Life Ins. Co.*, 174 F3d 1207, 1212 (11th Cir. 1999).

[26] See *Davila*, supra at 2493.

[27] As set forth below, we would also conclude that the fourth element has not been satisfied because Bauer and Wright's complaint does not seek relief like that available under ERISA § 502 (a).

[28] *Ingersoll-Rand Co.*, supra at 144.

[29] See ERISA § 502 (a) (1) (B), 29 USC § 1132 (a) (1) (B)

[30] See ERISA § 502 (a) (2), (3), 29 USC § 1132 (a) (2), (3).

[31] *Ingersoll-Rand Co.*, supra at 145.

[32] *Morstein*, supra at 723.

[33] See id.

§ 502 (a), 29 USC § 1132 (a). We therefore affirm the trial court's denial of PCS's motion to dismiss.

*Judgment affirmed. Ruffin, C. J., Barnes and Mikell, JJ., concur. Andrews, P. J., Johnson, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because the claims at issue here are both expressly and impliedly preempted by ERISA, I respectfully dissent.

The sole issue in this case is whether Bauer and Wright are entitled to pay the generic amount for the prescriptions provided by their medical benefit plan. That Bauer and Wright have attempted to avoid ERISA preemption of their complaint by casting it as one for "unjust enrichment" does not save it. It is the interpretation of the terms of the benefit plan at issue that determines the outcome of their claims.

As stated above, ERISA § 514 (a) provides that ERISA supersedes any and all state laws as they "relate to" any employee benefit plan covered by ERISA. "Congress used the words 'relate to' in § 514 (a) in their broad sense. To interpret § 514 (a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514." *Shaw v. Delta Air Lines*, 463 U. S. 85, 98 (103 SC 2890, 77 LE2d 490) (1983).

Federal courts "have uniformly held that state law challenges to the denial of benefits under an employee benefit plan are preempted." *Howard v. Parisian, Inc.*, 807 F2d 1560, 1564 (11th Cir. 1987). As the majority stated, there is no dispute that the medical benefit plans are governed by ERISA. Accordingly, because Bauer and Wright's cause of action was brought to remedy only the denial of benefits under an ERISA-regulated benefit plan, it falls within the scope of and is completely preempted by ERISA § 502 (a) (1) (B). *Aetna Health v. Davila*, 542 U. S. 200 (124 SC 2488, 2502, 159 LE2d 312) (2004).

That the state law claim in this case seeks damages for unjust enrichment and therefore is not directly related to the benefit plan, does not demand a different result.

> [Where] the existence of a pension plan is a critical factor in establishing liability under the (applicable state law) . . . (the) cause of action relates not merely to pensions benefits, but to the essence of the pension plan itself. [*Ingersoll-Rand Co. v. McClendon*, 498 U. S. 133, 139-140 [(111 SC 478, 483, 112 LE2d 474) (1990)]. Accordingly, state law claims have been preempted by ERISA which sought damages arising from denial of plan benefits on the basis of fraud, intentional infliction of emotional distress, breach of covenant of good faith and fair dealing, tortious interference with contract,

and unfair trade practices. See *Howard v. Parisian, Inc.*, 807 F2d 1560, 1564 (11th Cir. 1987).

*Norton v. North Ga. Foods*, 211 Ga. App. 684, 686 (440 SE2d 263) (1994).

The state law claims are also impliedly preempted. As previously stated, ERISA § 514 (a) expressly preempts any and all state laws as they relate to any employee benefit plan covered by ERISA. Further, even where there is no express preemption, a cause of action will be preempted if it conflicts directly with an ERISA cause of action. *Ingersoll-Rand Co.*, supra at 142.

ERISA § 502 (a) (1) (B) provides: "A civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 USC § 1132 (a) (1) (B). Under this provision, "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits. . . . *Firestone Tire &c. Co. v. Bruch*, 489 U. S. 101, 115 (109 SC 948, 103 LE2d 80) (1989)." *Aetna*, supra at 2496.

As appellants point out, appellees could have sought to recover any excessive co-payments under ERISA § 502 (a) (1) (B) since the plan is obligated to pay them a prescription drug benefit minus the applicable co-payment. And, their entitlement to a lower generic co-payment depends entirely on their rights and obligations under the benefit plan. As stated in *Aetna*, when a claim is based on the denial of coverage for medical care, which logically would include prescription medication, and the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, then the suit falls within the scope of ERISA § 502 (a) (1) (B). *Aetna*, supra at 2496. Because § 502 (a) provides the exclusive remedy for enforcement of any rights or obligations created by an ERISA plan, any state law cause of action that conflicts with this provision is also preempted. *Ingersoll-Rand Co.*, supra at 142.

I find that *Morstein v. Nat. Ins. Svcs.*, 93 F3d 715 (11th Cir. 1996), relied on by the majority, is distinguishable. In *Morstein*, the president and sole shareholder of a company sued an independent insurance agent and his company, claiming that he fraudulently induced her to purchase a policy of major medical insurance. Id. at 717. The court held that this claim did not fall within the scope of ERISA's preemption because it did not have sufficient connection to the plan itself to "relate to" the plan. Id. at 724. In the instant case, however,

benefits under the plan are the basis for the claim and the reasoning in *Morstein* does not apply.

The majority goes to great lengths to distinguish *Aetna*. First, the opinion states that the plaintiffs in *Aetna* were denied benefits based on the terms of their ERISA plans. I fail to see how that is different from the case before us. Second, I am puzzled as to the purpose of the majority's discussion of "complete" preemption, citing *Butero v. Royal Maccabees Life Ins. Co.*, 174 F3d 1207 (11th Cir. 1999). That case discusses "superpreemption," which concerns the existence of federal subject matter jurisdiction. *Id.* at 1212. As the majority acknowledges before it goes through the four elements required for complete or superpreemption, that is not applicable in this case.

Moreover, to the extent the majority contends the claims are not preempted because the defendants are not fiduciaries under the plan, that is not the law. See *Howard*, supra at 1564.

Also, contrary to the majority's contention, Bauer and Wright's claims are cognizable under ERISA § 502 (a) (1) (B). And, as previously stated, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna*, supra at 2495.

Accordingly, Bauer and Wright's claims are expressly preempted under ERISA as arising from and relating to an employee benefit plan. See ERISA § 514 (a), 29 USC § 1144 (a); *Shaw*, supra. The claims are also impliedly preempted because they conflict directly with and are duplicative of an ERISA cause of action under § 502 (a). *Ingersoll-Rand Co.*, supra at 142. Therefore, I respectfully dissent from the majority's holding to the contrary.

I am authorized to state that Presiding Judge Johnson and Presiding Judge Blackburn join in this dissent.

DECIDED JULY 13, 2005 — ▆▆▆▆▆▆▆▆▆

*Holland & Knight, Susan W. Housen, Laurie W. Daniel*, for appellants.

*Fine & Block, Kenneth I. Sokolov*, for appellees.