Charles E. **CULPEPPER**,
et al., Plaintiffs,

v.

**PROTECTIVE LIFE INSURANCE COMPANY, et al., Defendants.**

**Civ. Action No. CV–95–A–1576–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 16, 1996.

---

Russell L. Irby, Eufaula, AL, Jere L. Beasley, Wilson Daniel Miles, III, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for plaintiffs.

Maibeth J. Porter, Katharine A. Weber, Maynard, Cooper & Gale, P.C., Birmingham, AL, for Protective Life Insurance Company, defendant.

### MEMORANDUM OPINION & ORDER

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is now before the court on a Motion to Remand, filed by the Plaintiffs.

Plaintiffs filed this action in the Circuit Court of Barbour County, Alabama. In the six-count complaint, Plaintiffs aver that in connection with the sale of certain life insurance policies, Defendants committed fraud in the inducement, general fraud, fraudulent suppression, negligence, wantonness, negligent supervision, and wanton supervision. Named as Defendants in the action were Protective Life Insurance Company and various fictitious persons, firms, corporations, and/or other entities.

The facts of this case revolve around the National Guard Association of Alabama (hereinafter referred to as the "Association"). The Association is an unincorporated, nonprofit employee organization for present and former members of the National Guard of Alabama. Moreover, membership in the Association is purely voluntary. The members of the Association created the National Guard Association of Alabama Insurance Trust (hereinafter referred to as the "Trust"). The purpose of the Trust is to administer the employee welfare benefit plan which was set up by the Association for its members. Members of the Association and full-time employees of the Association and the Trust may participate in this insurance

program. Protective Life Insurance Company insures the plan under which participants receive death benefits pursuant to the terms of the group policy.

The Plaintiffs in this cause became participants in the insurance plan through their membership in the Association or their employment with the Association or the Trust. The Plaintiffs allege that when they purchased their Protective Life policies, they were told by the Defendants that the benefits under the policy would never decrease as long as they continued to pay the insurance premiums. The Plaintiffs also allege that they were told that the policies would be effective for the remainder of their lives as long as they continued to pay the insurance premiums. Plaintiffs claim that in 1995 they learned that the benefits under their Protective Life policies would be decreased by fifty percent at age sixty, and that their benefits would be terminated at age 65 unless they converted their policies to whole life policies.

Defendant Protective Life filed a Notice of Removal asserting that jurisdiction is properly vested in federal court pursuant to 28 U.S.C. § 1331. Defendant contends that the Plaintiffs' claims present a federal question because the claims require application of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001 *et seq.* Plaintiffs filed a Motion to Remand contending that this case is not governed by ERISA. Plaintiffs contend that the Association is a governmental entity and thus is exempt from ERISA coverage pursuant to the governmental plan exception, 29 U.S.C. § 1003(b)(1).

For the reasons stated below, this court finds that the Motion to Remand is due to be DENIED.

## II. DISCUSSION

■ Federal courts are courts of limited jurisdiction. *See, Kokkonen v. Guardian Life Ins. Co. of Am,* 511 U.S. 375, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee,* 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984).

As such, they have the power to hear only those cases that they have been authorized to hear by Congress or by the Constitution. *Kokkonen,* 511 U.S. at ——, 114 S.Ct. at 1675. More generally, the law in the Circuit favors remand where federal jurisdiction is not absolutely clear. As stated by the 11th Circuit, in deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

In determining whether this court has subject matter jurisdiction over Plaintiffs' claims, the court is faced with three questions. First, does the Protective Life plan, which was set up by the Association and is administered by the Trust, fall within the coverage of ERISA? Second, if the plan does fall within the scope of ERISA, does the governmental plan exception apply and prevent application of ERISA? Finally, if the plan is covered by ERISA and the governmental exception does not apply, are Plaintiffs' claims of the type which are preempted by ERISA?

### A. Is the Protective Life Plan an "Employee Welfare Benefit Plan" as Defined by ERISA?

■ Except for certain plans which are excepted from the coverage of ERISA, ERISA applies "to any employee benefit plan if it is established or maintained ... by any employee organization or organizations representing employees engaged in commerce or in any activity affecting commerce...." 29 U.S.C. § 1003(a)(2). "The term 'employee benefit plan' ... means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is "any plan, fund, or program which was ... established or maintained by ... an employee organization ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the

event of ... death...." 29 U.S.C. § 1002(1)(A).

When determining whether an "employee welfare benefit plan" has been established, a court should ascertain whether the following requirements are met: "(1) a 'plan, fund or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing ... death ... benefits ... (5) to participants or their beneficiaries." *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982). The first requirement, a "plan, fund or program" requires "the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Donovan*, 688 F.2d at 1372. Moreover, under the second requirement, such a plan, fund, or program is "established" "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373.

In this case, an "employee welfare benefit plan" was "established." As noted above, Protective Life insures the plan which was established by the Association for its eligible members, pursuant to Group Policy No. GL–3744, which became effective January 15, 1974. Pursuant to the terms of the group policy, the intended benefits include the payment of specified benefits upon an insured's death. The class of beneficiaries are those designated by the insureds. The source of financing is the payment of premiums by each group member, supplemented by additional contributions of the Trust. Finally, the procedures for receiving benefits are set forth in the group policy itself.

Moreover, the plan was established by an employee organization, the National Guard Association of Alabama (the "Association"), whose membership consists of present and former employees of the National Guard of Alabama. Furthermore, the purpose of the plan is to provide death benefits to members' beneficiaries. Thus, the court finds that the plan is an "employee welfare benefit plan" as defined by ERISA.

**B. Does the Governmental Plan Exception Apply and Prevent Application of ERISA?**

Even though the Protective Life plan is an "employee welfare benefit plan" and thus falls within the scope of ERISA, it is nonetheless excluded from ERISA coverage if the plan is a "governmental plan." 29 U.S.C. § 1003(b)(1). "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). The issue here is whether the Association and the Trust are political subdivisions, agencies, or instrumentalities of the government.

The terms "political subdivision," "agency," and "instrumentality" are not defined by ERISA, nor are there any ERISA regulations which define or interpret these words. "In determining whether an entity is a "political subdivision" under 29 U.S.C. § 1002(32), the court must consider whether the entity was " '(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or the general electorate.' " *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 916 (2nd Cir.1987) (adopting the test from *NLRB v. Natural Gas Utility District*, 402 U.S. 600, 604–605, 91 S.Ct. 1746, 1749, 29 L.Ed.2d 206 (1971), which determined whether the Utility District fell within the political subdivision exception to the National Labor Relations Act). The *Rose* court decided that the Metropolitan Transit Authority (MTA) was a political subdivision because it satisfied both of the alternative tests. *Rose*, 828 F.2d at 916. First, the court found that MTA was "created directly by the state" because the entity was created by a statute which was passed by the state legislature, MTA performed an essential governmental function, and MTA benefited the people of the state of New York. *Id.* The court also found that MTA was "administered by individuals who are responsible to public officials or to the general electorate" because MTA's board members were appointed by and subject to

removal by the governor and the state senate. *Id.*

The *Rose* court, noting that "agency" and "instrumentality" are not defined by ERISA or its regulations, looked to other federal statutes to interpret those terms. "The Internal Revenue Service ... has had occasion to define 'agency or instrumentality' under 26 U.S.C. § 414(d).... The definition of 'governmental plan' in § 414(d) is virtually identical to the definition in 29 U.S.C. § 1002(32)." *Id.* at 917–918. The IRS generally considers six factors when determining whether an entity is an agency or instrumentality under § 414(d). *Id.* at 918. These factors are found in Revenue Ruling 57–128:

> (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.

Rev.Rul. 57–128, 1957–1 C.B. 311. The *Rose* court then used these factors to determine if the Long Island Railroad (LIRR) was an agency or instrumentality of the government. *Rose,* 828 F.2d at 918. LIRR's outstanding stock was wholly owned by the Metropolitan Transit Authority, and there were no private interests in LIRR. *Id.* The court found that LIRR satisfied all six of the IRS factors, and thus was an agency or instrumentality of the government under 29 U.S.C. § 1002(32). *Id.* LIRR served an essential government function—transportation—on behalf of the state. *Id.* It was wholly owned by the MTA and governed by the same persons who were appointed to the MTA by the governor. *Id.* The LIRR's functions were derived from the MTA's statutory authority, and the LIRR

received state subsidies to meet its expenses. *Id.*

Other courts have adopted these tests in determining whether an entity is a political subdivision, agency, or instrumentality. See, e.g., *Shannon v. United Services Auto. Assoc.,* 965 F.2d 542, 548 (7th Cir.1992) ("[W]e adopt the NLRB test from *Natural Gas Utility District* to determine if [the entity] is a governmental subdivision, agency, or instrumentality for the purpose of ERISA, 29 U.S.C. § 1002(32)."); *Harbor Insurance Co. v. Blackwelder,* 554 So.2d 329 (Ala.1989) ("While it could be argued that some of the six factors [in Revenue Ruling 57–128] apply to the Plan, we nonetheless conclude that, under the totality of the circumstances, the [entity] was not an agency or instrumentality of the [s]tate.").

The facts of the present case are most similar to those of ERISA Advisory Opinion No. 83–13A. The inquiry in that opinion was whether a retirement and death benefit plan for the members of the Denver Fire Fighters Protective Association (the Association) was a "governmental plan" exempt from the coverage of ERISA. Dept. of Labor ERISA Advisory Opinion Letter No. 83–13A, 1983 WL 22505 (E.R.I.S.A.) (March 14, 1983). The facts involved were as follows:

> Active membership in the Association is voluntary and is limited to current or retired employees of the Fire Department of the City and County of Denver, Colorado (the Denver Fire Department). Membership in the Association, however, is not a condition of employment with the Denver Fire Department. The objects of the Association stated in Article I of its constitution include, in pertinent part, "... to render financial aid and relief to [its members] and to their beneficiaries." Benefits provided by the Association consist of lump sum death and retirement benefits for eligible members.... The Association also sponsors activities and recreational programs for its membership and purchases recreational equipment.
>
> The members' monthly dues, interest on investments, and profits from the yearly firefighters' benefit dance are the major sources of the Association's revenues. By

agreement with the Denver Fire Department, dues for the Association can be deducted from its employee's paychecks and forwarded to the Association at the employee's request. The amounts of dues are set by a council elected by the Association's membership. This elected council also governs all operations of the Association, in accordance with Association bylaws and constitution, except for those matters such documents reserve to the membership at large.... [T]he only relationship between the Denver Fire Department or any other governmental entity and the benefits the Association provides its members is the payroll deduction dues checkoff system made available to its employees by the Denver Fire Department.

*Id.* The administrator of the Office of Pension and Welfare Benefit Programs, U.S. Department of Labor, concluded that the Association was not a governmental entity. *Id.* "[N]either the Denver Fire Department nor any other governmental entity has or exercises any control over the Plan or Plan funds nor are any funds for the Plan's operation contributed by such entities. Under these circumstances, ... the program of benefits ... is not a governmental plan within the meaning of [§ 1002(32)]." *Id.*

In the present case, the National Guard Association of Alabama (the Association) is an unincorporated, non-profit organization and is separate from, is not maintained by, and was not established by the National Guard of Alabama. Membership in the Association is purely voluntary and is open to any present or former member of the National Guard of Alabama.

While the purpose of the Association, at first glance, might appear to involve essential governmental functions, a closer look reveals that the Association is better characterized as a philanthropic, service organization. Its purposes include promoting and supporting national security; promoting and improving better relations between the active armed forces and the national guards; fostering and improving relations between the general public and the national guards; promoting friendship, cooperation, and association among the members of the Association; pro-

moting "esprit de corps" in the Alabama National Guard; and promoting the welfare of the members of the national guards. While these goals concern elements of the government, none of the goals and purposes of the Association involve the actual participation in military events and national security. Rather, the purposes involve improving various relations and supporting morale and welfare of the military. Thus, the Association does not perform essential governmental functions, but rather acts as a philanthropic, service organization.

The Association and the National Guard Association of Alabama Insurance Trust (the Trust) receive no funding from the National Guard of Alabama or the United States National Guard for insurance or otherwise. Present and retired guardspersons may participate in the Association's insurance program. Also, full-time employees of the Association and the Trust may participate in the Association's insurance program, even if they have never served in the National Guard of Alabama or the United States National Guard. Premiums for the insurance, which include both the costs of coverage and the costs of administration of the program, are deducted from the guardspersons' paychecks or are paid directly by the guardspersons to the Trust. Other than this minor role of deducting the premiums from guardspersons' paychecks, the National Guard of Alabama and the United States National Guard contribute no funds to the insurance plan and have no control over the insurance plan funds.

The Association and Trust perform no functions on behalf of the National Guard of Alabama or the United States National Guard. Moreover, the Association and Trust offices are located in completely separate facilities from the offices, bases, and facilities of the National Guard of Alabama and the United States National Guard and are in no way connected.

Finally, the officers of the Association are not appointed by or under the control of the National Guard of Alabama or the United States National Guard. The officers are elected annually from among the active members of the Association by the Association's

members. The trustees of the Trust are elected by the officers and sixteen other members of the Association. Thus, the members of the Association govern and control their organization.

Basically, the Association is an employee organization, whose members just happen to be employees of a governmental entity. Other than that fact, there are no other facts which would cause the Association to be considered a "political subdivision" or an "agency or instrumentality" of the government. Under the facts and circumstances of this case, in light of the NLRB test, *supra,* and the six factors outlined in Revenue Ruling 57–128, *supra,* the court is of the opinion that the Association and the Trust are not political subdivisions or agencies or instrumentalities of the government. Thus, the court finds that the governmental plan exception to ERISA under 29 U.S.C. §§ 1003(b)(1) and 1002(32) is inapplicable. The Protective Life group plan falls within the scope of ERISA.

### C. Are Plaintiffs' Claims of the Type Which Are Preempted by ERISA?

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). As discussed *supra* in Parts A and B, the Protective Life group plan is an "employee benefit plan" and is not exempt under the governmental plan exception.

■ For the purposes of preemption, a law "relates to" an employee benefit plan if it " 'has a connection with or reference to such a plan.' " *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). "[A] state law cause of action 'relates to' an employee benefit plan if the ... conduct giving rise to such claim was not 'wholly remote in content' from the benefit plan." *Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791, 794 (11th Cir.1989) (quoting *Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1243

(11th Cir.1987). A claim relates to a plan only if "the facts relating to the employee's failure to receive benefits are relevant to the state law claim." *Farlow,* 874 F.2d at 794.

In *Farlow,* the 11th Circuit held that the Farlows' state law claims of misrepresentation and negligence were preempted by ERISA. *Id.* The Farlows alleged that an insurance agent, an insurance agency, and an insurance company attempted to solicit their business and represented that their insurance plan would provide the same coverage as the Farlows' current plan. *Id.* at 792. However, after the Farlows switched to this new policy, Mrs. Farlow became pregnant, and the Farlows discovered that their new policy did not provide maternity or pregnancy coverage, even though their prior policy would have. *Id.* The Farlows asserted claims for misrepresentation and negligence. The 11th Circuit found that the Farlows' allegations were "intertwined with the refusal to pay benefits," and that the Farlows' state law claims were not wholly remote from the insurance plan. *Id.* at 794. Moreover, the court rejected "the Farlows' contention that simply because their claims involve misconduct in the sale and implementation of the [plan], their claims do not relate to the plan." *Id.*

■ In the present action, Plaintiffs allege that when they purchased their Protective Life policies, they were told by the Defendants that the benefits under the policy would never decrease as long as they continued to pay the insurance premiums. The Plaintiffs also allege that they were told that the policies would be effective for the remainder of their lives as long as they continued to pay the insurance premiums. Plaintiffs claim that in 1995 they learned that the benefits under their Protective Life policies would be decreased by fifty percent at age sixty, and that their benefits would be terminated at age 65 unless they converted their policies to whole life policies. In their six-count complaint, Plaintiffs aver that in connection with the sale of the Protective Life policies, Defendants committed fraud in the inducement, general fraud, fraudulent suppression, negligence, wantonness, negligent supervision, and wanton supervision.

The court finds that Plaintiffs' allegations are intertwined with Protective Life's refusal to pay benefits as allegedly promised, and that Plaintiffs' state law claims are not wholly remote from the Protective Life insurance plan. Thus, the court holds that Plaintiffs' state law claims are preempted by ERISA.

Recently, the Eleventh Circuit issued an *en banc* opinion narrowing the scope of the ERISA preemption doctrine and, in part, overruling *Farlow.* *See Morstein v. National Ins. Servs., Inc.,* 93 F.3d 715 (11th Cir. 1996) (*en banc* ). The court's analysis in *Morstein,* however, leads this court to conclude that that ruling does not apply to this case. In *Morstein,* the Eleventh Circuit concluded that state law claims alleging fraud and negligence in the sales of an employee benefits plan brought against an insurance broker and the broker's employer, an independent insurance sales agency, were not preempted by ERISA. *See id.* at 716. The court's conclusion hinged on the status of the Defendants—the broker and the independent agency—as non-ERISA entities. The court identified the ERISA entities as "the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* at 722. The court held that state law claims brought against non-ERISA entities are not preempted by ERISA when they do not affect relations among principal ERISA entities. *See id.* In this case, the Plaintiff asserts claims against the insurance company itself and agents of the insurance company. These Defendants clearly qualify as "ERISA entities." As·a result, this court finds that *Morstein* does not change the result in this case.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is due to be and is hereby DENIED.