Miller B. ENGELHARDT,
M.D., Plaintiff,

v.

PAUL REVERE LIFE INS.
CO., et al., Defendants.

Miller B. Engelhardt, M.D., Plaintiff,

v.

Paul Revere Life Ins. Co.,
et al., Defendants.

Nos. Civ.A. 96–D–699–N,
Civ.A. 98–D–20–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 19, 1999.

Dennis R. Bailey, Nicholas T. Braswell, III, Charles A. Stakely, Jr., Montgomery, AL, for plaintiff.

Mark Davis Hess, Bert S. Nettles, Birmingham, AL, Mark E. Schmidtke, Valparaiso, IN, David B. Walston, Birmingham, AL, for defendant.

## JUDGMENT

DE MENT, District Judge.

In accordance with the attached Memorandum Opinion And Order and Rule 58 of the *Federal Rules of Civil Procedure,* it is CONSIDERED, ORDERED and ADJUDGED as follows:

1. Defendant Paul Revere Life Insurance Co.'s Motion For Summary Judgment, filed August 23, 1996, be and the same is hereby DENIED AS MOOT in part and DENIED in part.

2. Plaintiff Miller B. Engelhardt's Cross Motion For Summary Judgment, filed July 30, 1998, be and the same is hereby DENIED AS MOOT in part and GRANTED in part. Pursuant to 29 U.S.C. § 1132(a)(1)(B), the court hereby CLARIFIES that Plaintiff's amendment to his policy does not exclude eye conditions which are unrelated to glaucoma and Plaintiff's eye condition resulting from a detached retina entitles Plaintiff to total disability benefits until the age of 65 so long as Plaintiff continues to meet the policy's definition of "totally disabled from your own occupation or total disability from your own occupation."

3. Plaintiff Miller B. Engelhardt be and the same is hereby AWARDED prejudgment interest at a rate of 1.5% per month from the date Defendant Paul Revere Life Insurance Co. first denied Plaintiff's claim to the date it paid Plaintiff past benefits due under the policy.

4. Defendant Eric Baum's Motion For Summary Judgment, filed October 19, 1998, be and the same is hereby GRANTED in favor of Defendant Eric Baum and that Plaintiff take nothing by his said suit against Defendant Eric Baum.

5. Plaintiff's Motion To Remand, filed January 26, 1998, be and the same is hereby DENIED.

6. There being no remaining triable issues, the Clerk is directed to close this consolidated action.

## MEMORANDUM OPINION AND ORDER

Before the court are the following motions:

1. Defendant Paul Revere Life Insurance Co.'s ("Paul Revere") Motion For Summary Judgment ("Paul Revere's Mot.Summ.J.") and supporting Memorandum Of Law ("Paul Revere's Mem."), both filed August 23, 1996;

2. Plaintiff Miller B. Engelhardt's ("Plaintiff") Cross Motion For Summary Judgment And Opposition To Defendant's Motion For Summary Judgment ("Pl.'s Mot.Summ.J"), filed July 30, 1998;

3. Plaintiff's Request For Attorney's Fees, which the court construes as a Motion For Attorney's Fees, filed August 31, 1999;

4. Defendant Eric Baum's ("Baum") Motion For Summary Judgment ("Baum's Mot.Summ.J.") and Statement Of Undisputed Facts And Memorandum Of Law In Support Of Motion For Summary Judgment ("Baum's Mem."), both filed October 19, 1998; and

5. Plaintiff's Motion To Remand, filed January 26, 1998.

The court has examined the Parties' respective motions and the numerous responses, replies and surreplies filed in support of and in opposition to the above motions. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds as follows:

1. Paul Revere's Motion For Summary Judgment is due to be denied as moot in part and denied in part;

2. Plaintiff's Cross Motion For Summary Judgment is due to be denied as moot in part and granted in part;

3. The court will reserve ruling on Plaintiff's Motion For Attorney's Fees and will set a briefing schedule for the Parties to address the five factors in *Florence Nightingale Nursing Svc. Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1485 (11th Cir. 1995);

4. Baum's Motion For Summary Judgment is due to be granted; and

5. Plaintiff's Motion To Remand is due to be denied.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and 28 U.S.C. § 1331 (federal question jurisdiction). The parties do not contest personal jurisdiction or venue.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Plaintiff's Claim Against Paul Revere, Civil Action No. 96–D–699–N

The procedural history and undisputed facts pertaining to Plaintiff's action against Paul Revere are set forth in *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346 (11th Cir.1998) ("*Engelhardt I*"), from which the court summarizes. Plaintiff was one of four surgeons who had formed a group practice. The practice joined a "multi-employer trust" established by Paul Revere, which provided group disability insurance coverage to the surgeons and the eligible employees within the surgeons' group practice. *Id.* at 1348.

In Plaintiff's application for disability insurance coverage, he informed Paul Revere that he had been diagnosed with glaucoma. *Id.* As a condition of coverage, Paul Revere required Plaintiff to sign an amendment excluding benefits for any dis-

ability related to " 'either or both eyes.' " *Id.*

Plaintiff agreed to sign the amendment only after receiving certain assurances from both Paul Revere and Stan Montgomery ("Montgomery"), the "independent insurance agent" who sold Plaintiff the policy. *Id.* Montgomery told Plaintiff that the amendment solely applied to glaucoma-related problems, and Paul Revere wrote in a letter to Plaintiff that the amendment would be applied " 'with common sense and reason.' " *Id.* Approximately two years after Plaintiff's policy became effective, Plaintiff suffered a detached retina and was no longer able to perform surgery. The detached retina was "unrelated to" Plaintiff's glaucoma. *Id.* Plaintiff filed a claim with Paul Revere for disability benefits under the policy. Paul Revere, which "had the exclusive right to determine eligibility for benefits," denied the claim based on the aforementioned amendment. *Id.*

Plaintiff filed an administrative appeal of Paul Revere's denial and asserted that he had been assured by an agent that the exclusion only applied to conditions caused by glaucoma. *Id.* Paul Revere then requested Plaintiff to provide additional information, such as the name of the agent who made the promise or documentation related to the agent's representation. *Id.* At that point, Plaintiff abandoned his administrative appeal and filed this lawsuit. *Id.*

Plaintiff originally brought his action against Paul Revere and Montgomery in state court on April 2, 1996.[1] In the one-count Complaint, Plaintiff alleged a state law claim for fraudulent inducement arising out of his purchase of the policy. *Id.* at 1349. (*See also* Compl. at 1.) On April 25, 1996, Paul Revere removed this action to federal court, asserting that Plaintiff's state law claim was preempted by ERISA.

---

1. Montgomery is no longer a party in this action. In a Motion To Dismiss ("Mot."), filed October 5, 1998, Plaintiff and Montgomery represented that Montgomery "should be dismissed as a defendant." (Mot. at 1.) Based upon the Parties' agreement, this court dismissed Montgomery as a Defendant in an Order entered October 13, 1998.

*Id.* After removal, Plaintiff amended his Complaint to add Count II, an alternative claim only against Paul Revere for wrongful denial of benefits under ERISA. *Id.* Plaintiff then moved to remand Count I to state court, arguing that his state law claim was not preempted by ERISA because he lacked standing to sue under its provisions. *Id.*

Before the court ruled on Plaintiff's Motion To Remand and during discovery in this lawsuit, Paul Revere turned over to Plaintiff a memorandum written by Paul Revere's sales representative, Eric Baum ("Baum" and "Baum Memorandum"). The Baum Memorandum substantiated Plaintiff's argument that he had been orally assured that he was covered for eye traumas not caused by glaucoma. *Id.* As a result of the Baum Memorandum, Paul Revere reconsidered its denial of Plaintiff's claim for benefits, determined that Plaintiff was covered under the policy, and paid Plaintiff the past benefits due. Paul Revere also offered to make future payments and to "discuss the possible reimbursement of reasonable attorney fees and costs" to Plaintiff. *Id.* Paul Revere then filed a Motion For Summary Judgment arguing that there was no further relief available to Plaintiff under ERISA. *Id.*

The court did not rule on Paul Revere's Motion For Summary Judgment. Instead, the court "directed" Plaintiff to move to dismiss Count II (the ERISA claim) based on Paul Revere's post-lawsuit payments. *Id.* While Plaintiff moved for dismissal, both Plaintiff and Paul Revere informed the court that the issue of attorney's fees was unresolved and that the Parties disagreed on the appropriate amount of back interest due. By written Order, the court dismissed Count II, stating that a "de facto settlement" had been reached. *Id.* The court, however, retained jurisdiction to rule on any unresolved issues concerning attorney's fees and back interest. *Id.*

In the same Order, the court also granted Plaintiff's Motion To Remand the

fraudulent inducement claim (Count I). *Id.* The court found that Plaintiff was an "employer" and, thus, lacked standing to sue because he was not a "participant" or "beneficiary," as defined under ERISA. *Id.* at 1350. Therefore, the court found that Count I was saved from preemption. *Id.*

Paul Revere appealed the court's Order.[2] On appeal, Paul Revere argued the following: (1) that ERISA preempted Count I; (2) that the court erred in dismissing Count II; and (3) that the court erred in not ruling on its Motion For Summary Judgment. *Id.* First, in addressing Paul Revere's preemption argument, the Eleventh Circuit held that, contrary to the court's finding, Plaintiff was a "beneficiary," as defined in 29 U.S.C. § 1002(8). *Id.* at 1351. The Eleventh Circuit then held that Plaintiff's fraudulent inducement claim "affect[ed] the ongoing ERISA relationship between [Plaintiff] and Paul Revere," was completely preempted by ERISA and, thus, was properly removed to federal court. *Id.* at 1353–54. Accordingly, the Eleventh Circuit vacated this court's Order remanding Count I and instructed this court to dismiss Count I as preempted by ERISA. *Id.* at 1354–55.

Second, the Eleventh Circuit reversed this court's Order dismissing Count II, stating that

[c]ontrary to the court's description of the procedural posture of Count II, the parties had not settled all claims in that count. There is no indication in the record that Paul Revere paid past due benefits in exchange for [Plaintiff's] agreement to compromise part or all of his claims for more interest, attorney's fees, or extracontractual damages in Count II. Rather, Paul Revere's payment of the past due benefits was expressly unconditional and resulted from its conclusion that the prior denial of benefits was in error. Likewise, both parties made clear to the court that

serious, contested issues surrounding [Plaintiff's] substantial claims for more interest, attorney's fees, and extracontractual damages were unresolved.

*Id.* at 1355. Third, in remanding the case, the Eleventh Circuit also instructed the court "to consider Paul Revere's motion for summary judgment on Count II." *Id.*

After the decision in *Engelhardt I,* Plaintiff filed his Cross Motion For Summary Judgment on July 30, 1998. A year later, on August 31, 1999, Plaintiff filed a Request For Attorney's Fees under ERISA, which the court construes as a Motion For Attorney's Fees.

### B. Plaintiff's Claim Against Eric Baum, Civil Action No. 98–D–20–N

After the court entered its Order remanding Count I to state court but before the Eleventh Circuit vacated that Order in *Engelhardt I,* Plaintiff filed an Amended Complaint adding Baum as a Defendant. In his Amended Complaint, Plaintiff asserted that Baum, the "Regional Manager" for Paul Revere, fraudulently induced Plaintiff to purchase the policy by misrepresenting in the Baum Memorandum that the amendment "would only exclude preexisting conditions (such as glaucoma)." (Am.Compl.¶¶ 3, 15–17, 35, 40.)

Baum filed a Notice of Removal ("Notice"), arguing as Paul Revere had in *Engelhardt I* that this court had federal-question jurisdiction because any claim against Baum was completely preempted by ERISA. (Notice at 1.) Plaintiff filed a Motion To Remand on January 26, 1998, based on the reasoning in *Engelhardt v. Paul Revere Life Ins. Co.,* 951 F.Supp. 1003 (M.D.Ala.1996) (DeMent, J.), which has now been vacated. Also on January 26, 1998, Baum moved for a stay of the proceedings pending the Eleventh Circuit's decision in *Engelhardt I.* The court granted Baum's motion.

After the Eleventh Circuit issued its opinion in *Engelhardt I,* the court consolidated *Engelhardt v. Paul Revere Life Ins. Co.,* Civil Action 96–D–699–N, and *Engelhardt v. Eric Baum,* Civil Action 98–D–20–N, on October 1, 1998. Baum then filed his Motion For Summary Judgment on October 19, 1998. Both Plaintiff's Motion To Remand and Baum's Motion For Summary Judgment are pending before the court.

## III. STANDARDS OF REVIEW

### A. Summary Judgment Standard

On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106

S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Remand Standard*

It is well-settled that a defendant, as the party removing an action to federal court, has the burden to establish federal jurisdiction. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996). Removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1312 (M.D.Ala.1997) (DeMent, J.). "All doubts [and uncertainties] about federal court jurisdiction must be resolved in favor of a remand to state court." *Seroyer*, 991 F.Supp. at 1312 (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)).

## III. DISCUSSION

### A. *Paul Revere's Motion For Summary Judgment and Plaintiff's Cross Motion For Summary Judgment, Civil Action No. 96–D–699–N*

Both Paul Revere and Plaintiff agree that the facts are undisputed and urge the court to grant summary judgment in their favor. Paul Revere's argument for summary judgment is twofold. First, Paul Revere argues that Plaintiff failed to exhaust the internal administrative remedies available under the policy prior to filing this lawsuit. (Paul Revere's Mem. at 9–11.) Second, Paul Revere asserts that

> [b]ased upon information disclosed in discovery in this case, Paul Revere has reviewed [P]laintiff's benefit claim and has determined that the requested benefits should be paid to [ ][P]laintiff. Because Paul Revere is willing to pay all of the relief to which [P]laintiff is legally entitled under ERISA, Paul Revere is entitled to summary judgment.

(*Id.* at 1.)

On the other hand, in urging the court to grant summary judgment in his favor, Plaintiff argues that Paul Revere's post-lawsuit decision that Plaintiff was covered under the policy constitutes an admission of liability. In his Response To Paul Revere's Notice Of Continuing Pendency Of

Motion For Summary Judgment ("Resp. To Mot."), Plaintiff further asserts that "[i]t would be a mockery if this insurance company was allowed judgment in its favor simply by admitting that it had been wrong and by beginning to pay the benefits that were owed from the beginning." (Resp. To Mot. at 2–3.)

■ The court will first address Paul Revere's argument that Plaintiff failed to exhaust his administrative remedies. While ERISA is silent on whether the exhaustion doctrine is a prerequisite to bringing a lawsuit under its provisions, the Eleventh Circuit requires plaintiffs in ERISA actions to "exhaust available administrative remedies before suing in federal court." *Counts v. American General Life & Accident Ins. Co.,* 111 F.3d 105, 109 (11th Cir.1997). This exhaustion requirement "applies both to actions to enforce a statutory right under ERISA and to actions brought to recover benefits under a plan." *Id.* The purposes behind the exhaustion requirement are as follows: "to 'reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" *Curry v. Contract Fab. Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990) (quoting *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980)).

■ District courts, however, may in their discretion excuse the exhaustion requirement "when resort to administrative remedies would be futile." *Counts,* 111 F.3d at 108. A plaintiff must make a " 'clear and positive' showing of futility" before the court may suspend the exhaustion requirement. *Springer v. Wal–Mart Assoc. Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990).

It is undisputed that Plaintiff abandoned his administrative appeal and filed this lawsuit. Despite his failure to exhaust administrative remedies, Plaintiff argues that the Baum Memorandum, the document which caused Paul Revere to reconsider its prior decision denying Plaintiff's claim for benefits, surfaced only because of the discovery procedures resulting from Plaintiff's lawsuit. (*See* Resp. To Mot. at 2–3.) By asserting that payment would not have been forthcoming absent this lawsuit's discovery mechanisms, the court finds that Plaintiff is arguing that pursuing his administrative remedies would have been futile.

■ For two reasons, the court finds that completing the administrative appeal would have been futile for Plaintiff. First, the court has the benefit of hindsight. Subsequent to Plaintiff filing this lawsuit in April 1996, Paul Revere denied Plaintiff's administrative appeal in July 1996, relying on Plaintiff's amendment to the policy which excluded coverage for "either or both eyes." (Paul Revere's Mot. Summ.J., Ex. G.) Thus, the court finds that it is a factual certainty that on appeal Plaintiff's claim for benefits would have been denied. *See Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 659 (7th Cir.1992) ("In order to come under the futility exception, [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision.").

Second, even if Paul Revere had forgone consideration of Plaintiff's appeal once Plaintiff filed this lawsuit, the court's finding would be unaffected. That is, Paul Revere has admitted that the sole reason it reconsidered its denial of Plaintiff's claim for benefits is because of the discovery of the Baum Memorandum. (*See* Paul Revere's Mot.Summ.J., Ex. O.) The record further demonstrates and the court so finds that the Baum Memorandum surfaced *only* through the judicial discovery procedures in this lawsuit. Thus, "but for" this lawsuit, the court finds that the Baum Memorandum would not have appeared and Paul Revere would not have reconsidered its denial of Plaintiff's claim for benefits. Likewise, because Paul Revere possessed the Baum Memorandum,

not Plaintiff, the court finds unpersuasive Paul Revere's argument that had Plaintiff provided corroborating documentation during the appeal, it is likely that Plaintiff's claim for benefits would have been resolved prior to Plaintiff filing this lawsuit. (Paul Revere's Mem. at 10–11; Paul Revere's Resp. To Pl.'s Reply, filed Sept. 1, 1998 at 3.) For the foregoing reasons, the court finds that, based upon the futility exception, Plaintiff is excused from the administrative exhaustion requirement.

Now, in turning to the merits of Paul Revere and Plaintiff's cross motions for summary judgment, both argue that Paul Revere's post-lawsuit decision to pay Plaintiff's claim for benefits mandates a judgment in their favor. Neither Paul Revere nor Plaintiff, however, has provided any authority concerning the effect on an insurance company's liability when the insurance company voluntarily pays an insured requested benefits *after* the insured has filed an ERISA action, but *before* judgment has been entered.

Nonetheless, the logical starting point for the court is to determine what relief Plaintiff seeks in this ERISA action and whether Plaintiff has received the relief requested. In Plaintiff's Amended Complaint, Plaintiff requests (1) "past and future disability benefits," citing 29 U.S.C. § 1132(a)(1)(B), and (2) prejudgment interest computed at "a rate of 1½ percent per month from the date past benefits became due to date of payment of benefits," pursuant to § 27–1–17(b) of the Code of Alabama. (Am.Compl. at 2–3.) The court will address the two forms of relief requested by Plaintiff.

First, Plaintiff requests "past and future disability benefits." *Id.* Plaintiff may bring an ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Regarding Plaintiff's claim for past benefits due to him under the policy, the court cannot grant relief if the claim is moot. Federal courts may only decide claims that present actual controversies. *See* U.S. Const. Art. III, § 2; *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Claims become "moot when the issues are no longer 'live' or when the parties have no 'legally cognizable interest' in the outcome of the litigation." *Westmoreland v. National Trans. Safety Bd.,* 833 F.2d 1461, 1462–63 (11th Cir.1987) (citation omitted). "Whether the parties ... have a legally cognizable interest depends on what relief th[e] court may grant: if intervening events have made it 'impossible ... to grant any effectual relief,'" the claim is moot. *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.,* 179 F.3d 1279, 1287 (11th Cir.1999) (citation omitted). It is undisputed that, after this lawsuit commenced, Paul Revere determined that Plaintiff was qualified for coverage under the policy and paid Plaintiff all past benefits owed. Therefore, because there is no further relief that the court can award Plaintiff on his claim for past benefits, the court finds that Paul Revere's Motion For Summary Judgment and Plaintiff's Cross Motion For Summary Judgment on this claim are due to be denied as moot.

In addition to seeking recovery of past wrongfully denied benefits, Plaintiff requests "future disability benefits" under 29 U.S.C. § 1132(a)(1)(B). (Am.Compl. at 2.) Plaintiff argues that "judgment in his favor is needed in order to establish the validity of the claim throughout the life of the policy." (Pl.'s Reply, filed Aug. 24, 1998, at 2.) Plaintiff asserts further that "[a] judgment in favor of Paul Revere ... would jeopardize [Plaintiff's] right to continuing and future benefits" under the policy. (*Id.*) Paul Revere, on the other hand, argues that a "prospective judgment regarding the payment of future disability benefits" amounts to a request for extra-contractual damages because the policy requires Plaintiff to "submit ongoing proof of his eligibility for continued monthly benefits." (Paul Revere's Mem. at 7.)

While the court agrees with Paul Revere that extracontractual damages, such as compensatory and punitive damages, cannot be recovered under ERISA,[3] the court disagrees with Paul Revere's characterization of Plaintiff's requested relief. That is, the court interprets Plaintiff's demand as a request "to clarify his rights to future benefits" under the policy, which is a remedy expressly available under ERISA. 29 U.S.C. § 1132(a)(1)(B). Plaintiff is simply requesting a legal ruling to ensure that his policy conforms with the representations embodied in the Baum Memorandum concerning the scope of the amendment. Contrary to Paul Revere's assertion, Plaintiff is not seeking an unconditional clarification from the court that Plaintiff is now and forever more entitled to benefits under the policy. In fact, Plaintiff agrees with Paul Revere that future coverage is not automatic but rather is contingent upon Plaintiff qualifying for coverage under the terms of the policy. (*See* Pl.'s Resp. To Baum's Mot.Summ.J., filed Oct. 28, 1998 at 10, wherein Plaintiff discusses the relief he requests from Paul Revere.)

Because there is no dispute over the meaning of the terms of the policy, the court will simply interpret and clarify the policy as already agreed by the Parties. Thus, the court first finds and so declares that Plaintiff's amendment to his policy does not exclude eye injuries that are unrelated to glaucoma. Second, the court finds and so declares that based upon Plaintiff's eye condition resulting from a detached retina, Plaintiff is entitled to total disability benefits until the age of 65 so long as he continues to meet the policy's definition of "totally disabled from your own occupation or total disability from your own occupation," which means:

    a.  that because of injury of sickness [Plaintiff] cannot perform the important duties of your speciality in the practice of medicine, and

    b.  [Plaintiff is] under the regular care of a doctor; and

    c.  [Plaintiff does] not work at all.

(Paul Revere's Mot.Summ.J., Ex. P.)

In finding that summary judgment is due to be entered in favor of Plaintiff on his claim requesting a clarification of future rights under the policy, the court has not overlooked Paul Revere's statement in a letter written to Plaintiff that "[f]uture monthly benefits will be paid to the extent you continue to be eligible for said benefits under the terms of the benefits plan." (Paul Revere's Mot.Summ.J., Ex. O.) While the court does not question the integrity of Paul Revere's representation, without a legal ruling, Paul Revere would be "free to return to [its] old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

Based on the history of this case, in particular Paul Revere's post-lawsuit reconsideration of its denial of Plaintiff's claim for benefits and ensuing payment, the court finds that a judgment clarifying Plaintiff's rights under the policy to future benefits will wholly eliminate the possibility of any recurring violation. *See id.* (holding that a "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot[,]" where "there exists some cognizable danger of recurrent violation"). Accordingly, the court finds that under 29 U.S.C. § 1132(a)(1)(B) Plaintiff is entitled to relief on his claim for a clarification of his rights to future benefits under the policy, that Plaintiff's Cross Motion For Summary Judgment on said claim is due to be granted, and that Paul Revere's Motion For Summary Judgment on said claim is due to be denied.

Second, Plaintiff requests prejudgment interest. Specifically, he re-

---

**3.** *See McRae v. Seafarers' Welfare Plan,* 920 F.2d 819, 821 (11th Cir.1991) (holding that extracontractual damages are not available under ERISA); *Howe v. Varity,* 36 F.3d 746, 754–55 (8th Cir.1994) (stating that extracontractual damages are damages "other than the payment of benefits owed under [an ERISA] plan").

quests 1.5% interest per month for the time during which he was wrongfully denied benefits under the policy. (*See* Am. Compl. at 3.) Awards of prejudgment interest in ERISA actions are within the discretion of the trial court. *Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1484 (11th Cir.1995). The court finds that an award of prejudgment interest is warranted in this action. Namely, the court finds that prejudgment interest will compensate Plaintiff for money he would have received if Paul Revere had paid Plaintiff's claim for benefits when Plaintiff first filed his claim and likewise will redress Plaintiff for the time period during which he was denied use of the money. *See Lutheran Medical Center of Omaha, Neb. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan*, 25 F.3d 616, 623 (8th Cir. 1994).

Furthermore, based upon *Nightingale, supra*, the court finds that it is appropriate in this case, as requested by Plaintiff, to compute the interest rate at the rate provided in § 27–1–17(b) of the Code of Alabama. This code section provides that an insurer who has denied an insured's claim for invalid and improper reasons "must pay the insured 1½ percent per month on the amount of said claim until it is finally settled or adjudicated." Ala.Code § 27–1–17(b) (1981).

In *Nightingale*, the plaintiff was a business specializing in nursing care in patients' homes. 41 F.3d at 1478. The plaintiff provided services to a terminally ill patient, who was covered by Blue Cross/Blue Shield of Alabama ("Blue Cross"). *Id.* at 1479. When the plaintiff filed a claim with Blue Cross for reimbursement of all expenses arising from the care of the deceased patient, Blue Cross denied full coverage. *Id.* at 1479–1480. The plaintiff ultimately filed an ERISA action against Blue Cross asserting that Blue Cross had given oral assurances that the plaintiff would be reimbursed for 100% of its costs. *Id.*

The *Nightingale* plaintiff prevailed after a non-jury trial, and the district court awarded prejudgment interest at the rate of 1.5% per month, using the interest rate in § 27–1–17(b) of the Code of Alabama. *Id.* at 1480. The Eleventh Circuit held that "[i]t was within the district court's discretion to use § 27–1–17(b) as an analogy to fill a gap in ERISA law." *Id.* at 1484; *see also Smith v. American Int'l Life Assurance Co. of New York*, 50 F.3d 956, 958 (11th Cir.1995) (holding that a district court did not abuse its discretion when, in an ERISA action, it used the prejudgment interest rate from a Georgia statute comparable to § 27–1–17(b) of the Code of Alabama). Based on the foregoing, the court finds that Plaintiff is entitled to prejudgment interest at a rate of 1.5% per month for the time period during which Plaintiff was wrongfully denied benefits under the policy. The Parties shall calculate this time period from the date Paul Revere first denied Plaintiff's claim for benefits to the date Paul Revere paid Plaintiff the past benefits owed.

### B. *Plaintiff's Motion For Attorney's Fees*

Plaintiff has also moved for attorney's fees under ERISA. It is within the discretion of the court to award reasonable attorney's fees, including costs, in an ERISA action. *See* 29 U.S.C. § 1132(g)(1) ("In any action under this title … by a … participant … the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). In determining whether to award fees, the Court should consider the following five factors:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question re-

garding ERISA itself; and (5) the relative merits of the parties' positions. *Nightingale,* 41 F.3d at 1485; *Nachwalter v. Christie,* 805 F.2d 956, 962 (11th Cir. 1986).

Neither party has addressed these factors. Accordingly, the court will retain jurisdiction for the limited purpose of ruling on Plaintiff's Motion For Attorney's Fees and will set a briefing schedule. The Parties are directed to specifically address the five factors enunciated in *Nightingale, supra.*

### C. *Baum's Motion For Summary Judgment*

■■■ Baum argues that, under the reasoning in *Engelhardt I,* Plaintiff's state law fraudulent inducement claim against him is preempted by ERISA. In *Engelhardt I,* Plaintiff asserted the same fraudulent inducement claim as here but against Baum's employer, Paul Revere.[4] There, the Eleventh Circuit ruled that although Plaintiff's fraudulent inducement claim against Paul Revere was characterized solely as arising under state law, the claim nonetheless was within ERISA's "preemptive scope."[5] *Engelhardt I,* 139 F.3d at 1351. In reaching its holding, the Eleventh Circuit first ruled that Plaintiff was a "beneficiary" within ERISA's statutory definition. *Id.* The Eleventh Circuit next determined that Paul Revere was an "ERISA fiduciary, and thus an 'ERISA entity,' because [Paul Revere] had the exclusive authority to determine eligibility for benefits under the plan and to review denied claims." *Id.* at 1352. The Eleventh Circuit, therefore, concluded that the lawsuit "involve[d] a dispute between principal ERISA 'entities,'" and that Plaintiff's

"fraud claim affect[ed] the ongoing ERISA relationship between [Plaintiff] and Paul Revere." *Id.* at 1352.

The *Engelhardt I* court then determined that Plaintiff's claim was "completely preempted" for three reasons: (1) both Plaintiff and Paul Revere were "ERISA entities"; (2) Plaintiff challenged Paul Revere's "refusal to pay benefits" under the ERISA policy; and (3) although Plaintiff labeled his claim as fraudulent inducement, his cause of action was "at the heart" of ERISA because he was seeking his "contractual benefits" under the ERISA policy. *Id.* at 1353–54.

Baum argues that because he is an employee of Paul Revere, Plaintiff's fraudulent inducement claim against him likewise is completely preempted. More specifically, Baum argues that the "fraudulent inducement claim against [him] is, in reality, a claim against an 'ERISA entity' which relates to an ERISA plan and is … preempted." (Baum's Mem. at 2.) The court agrees with Baum that, under the reasoning in *Engelhardt I,* if Baum is an "ERISA entity" as is Paul Revere, then Plaintiff's fraudulent inducement claim against him is completely preempted by ERISA. Hence, the court must determine if Baum is an "ERISA entity."

■■■ As previously mentioned in *Engelhardt I,* the Eleventh Circuit held that Paul Revere was an "ERISA entity." 139 F.3d at 1352. Under the law-of-the-case doctrine, the court finds that this fact is "binding" in the instant action. *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 169 (11th Cir.1994). In determining Paul Revere's status under

---

**4.** It is undisputed that Plaintiff's fraudulent inducement claim against Baum arises from the same set of facts as in *Engelhardt I.*

**5.** Section 1144(a) of ERISA, commonly referred to as the preemption clause, provides that ERISA shall "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The preemption clause is "conspicious for its breadth" and should be

"expansively applied." *Swerhun v. Guardian Life Ins. Co. of America,* 979 F.2d 195, 197 (11th Cir.1992) (citations and internal quotations omitted). A state law "related to" an employee benefit plan if it "has a connection with or a reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

ERISA, the *Engelhardt I* court carefully reviewed and then distinguished its decision in *Morstein v. National Ins. Serv., Inc.*, 93 F.3d 715, 722 (11th Cir.1996), which narrowed ERISA's preemptive scope. 139 F.3d at 1352. The factual distinctions between *Engelhardt I* and *Morstein* also are important in examining Baum's status under ERISA.

In *Morstein*, the plaintiff purchased a major medical insurance policy from an independent insurance agent, Scott Hankins ("Hankins"). 93 F.3d at 716. Hankins worked for Shaw Agency, "an independent agency or brokerage that is authorized to write policies for several insurance companies." *Id.* at 716–717 n. 2. The plaintiff had contacted Hankins to replace an existing policy. *Id.* at 716. According to the plaintiff, Hankins assured her that the policy he proposed would provide the same coverage for preexisting conditions as her current policy. *Id.* at 716–717. Based on Hankins' representation, the plaintiff purchased the policy, which was administered by National Insurance Services, Inc. ("National"). *Id.* at 716–717.

Approximately a year after purchasing the policy, the plaintiff underwent hip replacement surgery. National refused to pay the plaintiff's claim, asserting that the surgery treated a preexisting condition which was not covered under the policy. *Id.* at 717. The plaintiff sued Hankins and Shaw Agency in state court under state laws. The plaintiff's claims arose from Hankins' alleged representation that the policy covered preexisting conditions. *Id.*

Hankins removed the case, arguing that ERISA preempted the plaintiff's state law claims. The district court denied the plaintiff's motion to remand, concluding that her claims were "clearly relate[d] to the employee benefit plan." *Id.* The Eleventh Circuit reversed and held that "when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA." *Id.* at 722.

The Eleventh Circuit reasoned that the state law claims against an *"independent insurance agent* and his agency" did not fall within ERISA's preemption doctrine for three reasons. *Id.* at 724 (emphasis added). First, the Eleventh Circuit concluded that Hankins and Shaw Agency were not ERISA entities, meaning they were not "the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* at 722. Second, the Eleventh Circuit held that the plaintiff's state law claims were not sufficiently related to the ERISA plan to warrant preemption, stating:

> Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA.... If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan.

*Id.* at 723.

In *Engelhardt I*, the Eleventh Circuit distinguished *Morstein:* "Unlike the independent insurance agent and agency in *Morstein*, Paul Revere is an ERISA fiduciary, and thus an 'ERISA entity,' because it had the exclusive authority to determine eligibility for benefits under the plan and to review denied benefits." *Engelhardt I*, 139 F.3d at 1352. Here, this court finds as a matter of law that, as Paul Revere's employee, Baum is not an independent insurance agent working for a non-ERISA entity; rather, Baum is an employee of a Paul Revere, an ERISA entity. Plaintiff has not argued a contrary position and, even in his Complaint, identifies Baum as a "Regional Manager" of Paul Revere. (Am. Compl.¶ 15.) Moreover, Plaintiff's fraudulent inducement claim asserted against Baum is premised entirely upon an alleged representation made by Baum concerning the scope of Plaintiff's coverage under the policy. Said representation occurred during Baum's employment with Paul Revere

and after Paul Revere's status as an "ERISA entity" had been established. *See Engelhardt I*, 139 F.3d at 1353 n. 7.

██ Because Baum is an employee of an "ERISA entity," he also is an "ERISA entity." *See Stoudemire v. Provident Life and Accident Ins. Co.*, 24 F.Supp.2d 1252, 1259 (M.D.Ala.1998) (citing *Engelhardt I* in support of its finding that the plaintiff's claim of fraudulent inducement against an insurance agent was preempted under ERISA because the agent was an employee of the insurance company, an ERISA fiduciary); *Culpepper v. Protective Life Ins. Co.*, 938 F.Supp. 794, 801 (M.D.Ala. 1996) (distinguishing *Morstein, supra*, and finding that the plaintiff was asserting causes of action against "the insurance company itself and agents of the insurance company," which plainly were " 'ERISA entities' "). Based on the foregoing, the court finds that Plaintiff's fraudulent inducement claim against Baum is completely preempted and, thus, Baum's Motion For Summary Judgment is due to be granted.

### D. *Plaintiff's Motion To Remand*

Plaintiff has moved the court to remand to state court his fraudulent inducement claim against Baum. Because Plaintiff's fraudulent inducement claim against Baum is completely preempted by ERISA, as discussed in Section IV.C. above, the court finds that Baum, as the party removing this action to federal court, has met his burden of establishing federal jurisdiction. *See Diaz*, 85 F.3d at 1505. Accordingly, Plaintiff's Motion To Remand is due to be denied.

### V. CONCLUSION

In *Engelhardt v. Paul Revere Life Ins. Co.*, Civil Action 96–D–699–N, Paul Revere and Plaintiff have filed cross motions for summary judgment on the only remaining count (Count II) of the Complaint. In arguing for summary judgment in its favor, Paul Revere asserts that Plaintiff has received all of the relief to which he is entitled under ERISA. Plaintiff, on the other hand, argues that Paul Revere's

post-suit decision that Plaintiff was covered under the policy constitutes an admission of liability, entitling Plaintiff to summary judgment. While the court finds that both Paul Revere and Plaintiff's motions for summary judgment are due to be denied as moot on Plaintiff's claim for back benefits under the policy, the court concludes that Plaintiff is entitled to summary judgment on his claim for relief under 29 U.S.C. § 1132(a)(1)(B) for a clarification of his future rights under the policy. Plaintiff likewise is entitled to interest at the rate of 1.5% per month for the time period during which Paul Revere wrongfully denied Plaintiff benefits under the policy. The court, however, will reserve ruling on Plaintiff's Motion For Attorney's Fees and will set a briefing schedule.

In *Engelhardt v. Eric Baum*, Civil Action 98–D–20–N, the court finds that summary judgment is due to be granted in favor of Baum because Plaintiff's state law fraudulent inducement claim against him is completely preempted by ERISA. Likewise, based on the doctrine of complete preemption, Plaintiff's Motion To Remand said claim is due to be denied.

### VI. ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED that Defendant Paul Revere Life Insurance Co.'s Motion For Summary Judgment, filed August 23, 1996, be and the same is hereby DENIED AS MOOT in part and DENIED in part.

It is further CONSIDERED and ORDERED that Plaintiff Miller B. Engelhardt's Cross Motion For Summary Judgment, filed July 30, 1998, be and the same is hereby DENIED AS MOOT in part and GRANTED in part. Pursuant to 29 U.S.C. § 1132(a)(1)(B), the court hereby CLARIFIES that Plaintiff's amendment to his policy does not exclude eye conditions which are unrelated to glaucoma and that Plaintiff's eye condition resulting from a detached retina entitles Plaintiff to total disability benefits until the age of 65 so

long as Plaintiff continues to meet the policy's definition of "totally disabled from your own occupation or total disability from your own occupation."

It is further CONSIDERED and ORDERED that Plaintiff Miller B. Engelhardt be and the same is hereby AWARDED prejudgment interest at a rate of 1.5% per month to be calculated from the date Defendant Paul Revere Life Insurance Co. first denied Plaintiff's claim to the date it paid Plaintiff past benefits due under the policy.

Upon CONSIDERATION of Plaintiff's Motion For Attorney's Fees, it is further ORDERED that Plaintiff file a brief in support of said motion on or before December 1, 1999 and that Paul Revere show cause on or before December 15, 1999, as to why said motion should not be granted. Thereafter, Plaintiff is given until December 22, 1999 to file a reply brief, if desired. The court RETAINS jurisdiction for the limited purpose of ruling on said Motion.

It is further CONSIDERED and ORDERED that Defendant Eric Baum's Motion For Summary Judgment, filed October 19, 1998, be and the same is hereby GRANTED and that Plaintiff take nothing by his said suit against Defendant Eric Baum.

It is further CONSIDERED and ORDERED that Plaintiff Miller B. Engelhardt's Motion To Remand, filed January 26, 1998, be and the same is hereby DENIED.

There being no remaining triable issues, the Clerk is directed to close this consolidated action.